Citation Nr: 1228223 
Decision Date: 08/15/12 Archive Date: 08/21/12

DOCKET NO. 05-00 791 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for a psychophysiological musculoskeletal reaction in the low back from July 16, 2003 to August 26, 2009. 

2. Entitlement to a rating in excess of 20 percent for a psychophysiological musculoskeletal reaction in the low back since August 26, 2009. 

3. Entitlement to a rating in excess of 10 percent for residuals of a left femur fracture since July 16, 2003.

4. Entitlement to a total disability rating based on individual unemployability (TDIU). 

5. Entitlement to an effective date prior to July 16, 2003 for the grant of service connection for paroxysmal benign arrhythmia. 



REPRESENTATION

Appellant represented by: Sean Kendall, Attorney


ATTORNEY FOR THE BOARD

B. Thomas Knope, Counsel


INTRODUCTION

The Veteran served on active duty from March 1969 to December 1971.

This matter is on appeal from decisions in May 2004 and June 2009 by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. However, jurisdiction of the appeal is currently with the RO in St. Petersburg, Florida.

In a January 2007 decision, the Board denied an appeal for the issues of entitlement to an increased rating for the Veteran's service-connected back and left femur disabilities. The Veteran appealed this decision to the United States Court of Appeals for Veterans Claims and, in April 2008, the Court vacated the Board's decision and remanded the case for additional development. This case was then remanded by the Board in March 2009, and again May 2011, for further development and is now ready for disposition. 

In addition to the issues on appeal listed above, the Veteran also claimed entitlement to service connection for an acquired psychiatric disorder, characterized as posttraumatic stress disorder (PTSD), which was granted in a May 2010 RO decision. Although he submitted a notice of disagreement to the assigned disability rating, a September 2011 rating decision granted a 100 percent disability rating for the entire period on appeal. As this constitutes a full grant of the claim, this issue is no longer on appeal before the Board. 

In his April 2011 Form VA-9, the Veteran requested a hearing before the Board, and the claims were subsequently remanded in May 2011 in order to provide him with one. However, in a July 2012 letter, he requested that his scheduled hearing be cancelled. Therefore, the Board may continue with adjudicating the claim. See 38 C.F.R. § 20.700.

Finally, the Board notes that the veteran submitted additional evidence that was received since the last RO review. However, in an August 2011 letter, the Veteran waived his right to RO consideration of this evidence. Accordingly, the Board concludes that there is no prejudice in proceeding with consideration of this case without affording the RO an opportunity to review the evidence in question. 

The issue of entitlement to TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Department of Veterans Affairs Regional Office.


FINDINGS OF FACT

1. For the period on appeal prior to August 26, 2009, the Veteran's low back disability has been characterized by complaints of pain and tenderness; residuals of a vertebral fracture without cord involvement, with abnormal mobility requiring a neck brace, ankylosis of the spine, intervertebral disc syndrome that is "moderate" I nature, muscle spasm at extreme forward be forward bending, flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, a combined range of motion of the thoracolumbar spine not greater than 120 degrees, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis or abnormal kyphosis, x-ray evidence of arthritis with involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations, or incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during the past 12 months have not been shown. 

2. For the period on appeal since August 26, 2009, the Veteran's low back disability has been characterized by complaints of pain and tenderness, with some limitation of motion; residuals of a vertebral fracture without cord involvement, with abnormal mobility requiring a neck brace, forward flexion of the thoracolumbar spine limited to 30 degrees or less, ankylosis of the entire thoracolumbar spine or intervertebral disc syndrome with severe recurring attacks or with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months have not been shown.

3. On July 16, 2003, the Veteran filed a claim seeking service connection for paroxysmal benign arrhythmia.

4. The RO issued a rating decision in June 2005 that granted service connection for paroxysmal benign arrhythmia, effective from July 16, 2003.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for a psychophysiological musculoskeletal reaction in the low back prior from July 16, 2003 to August 26, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes (DC) 5003, 5237, 5242, 5243 (2011); 38 C.F.R. § 4.71a, DCs 5285-5295 (2003). 

2. The criteria for a rating in excess of 20 percent for a psychophysiological musculoskeletal reaction in the low back since August 26, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5003, 5237, 5242, 5243 (2011); 38 C.F.R. § 4.71a, DCs 5285-5295 (2003).

3. The criteria for a rating in excess of 10 percent for residuals of a left femur fracture since July 16, 2003 have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, DC 5255 (2011). 

4. The criteria for an effective date prior to July 16, 2003, for the grant of service connection for paroxysmal benign arrhythmia, have not been met. 38 U.S.C.A. §§ 1502, 1521, 5103, 5103A, 5110(a) (West 2002); 38 C.F.R. §§ 3.1(r), 3.114, 3.303, 3.304, 3.400 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ) of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id.

In this case, regarding the Veteran's increased rating claims, a letter satisfying the notice requirements under 38 C.F.R. § 3.159(b)(1) was sent to the Veteran in September 2003, prior to the initial RO decision that is the subject of this appeal. The letter informed him of what evidence was required to substantiate the claims and of his and VA's respective duties for obtaining evidence. 

It is noteworthy that these issues were remanded by the Court in April 2008 partially on the basis that the notice provided to the Veteran was inadequate. Specifically, the Court stated that VA was obligated to provide him with notice of the specific criteria necessary for an increased rating. Citing Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008). However, while these instructions were being carried out, the U.S. Court of Appeals for the Federal Circuit vacated the Court's decision, holding that the VCAA notice does not have to be veteran-specific. See Vazquez-Flores v. Shinseki, 580 F.3d 1270 (2009). In view of the Federal Circuit's holding, the Board determines that required additional notice is no longer required, and the original notice provided to the Veteran is adequate. 

With respect to the Dingess requirements, this notice was not provided prior to the initial unfavorable decision on the claim by the RO. However, such notice errors may instead be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006) (where notice was not provided prior to the RO's initial adjudication, this timing problem can be cured by the Board remanding for the issuance of a VCAA notice followed by readjudication of the claim by the RO); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an SOC or SSOC, is sufficient to cure a timing defect).

In this case, after the Dingess notice letter was sent to the Veteran in April 2009, the claims were readjudicated, and a supplemental statement of the case (SSOC) was issued in May 2010. Therefore, adequate notice was provided to the Veteran prior to the transfer and certification of her case to the Board and complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b).

Regarding the Veteran's arrhythmia claim, this claim arises from his disagreement with the effective date following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is needed under VCAA.

Next, VA has a duty to assist a veteran in the development of the claim. This duty includes assisting him or her in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2011). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). First, the RO has obtained the Veteran's service treatment records and VA outpatient treatment records. While the RO has also conducted a search for records that may be in the custody of the Social Security Administration (SSA), no such records existed. 

In addition to the records acquired by VA, the Veteran has submitted a large number of records related to the treatment he has received. Importantly, the Court of Appeals for Veterans Claims remanded the issues on appeal in April 2008 in order to acquire records related to his PTSD claim. However, since that claim has been granted with a total disability rating, the development required by the Court is no longer necessary. 

Next, VA examinations with respect to the issues on appeal were obtained in January 2004 and August 2009. 38 C.F.R. § 3.159(c) (4). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the Board finds that the VA examinations obtained in this case are more than adequate, as they as were based on a full reading of the private and VA medical records in the Veteran's claims file as well as a thorough examination of the Veteran. Moreover, the examiners provide a complete rationale for all conclusions stated, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c) (4). 

Recognition is also given to the fact that the most recent of these VA examinations are now approximately three years old. However, the duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate examination was conducted. VAOPGCPREC 11-95. Here, there is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disabilities since these VA examinations, and he has not contended otherwise.

The Board also notes that, when this appeal was remanded by the Court in April 2008, one of the bases for remand was that the previous VA examination addressing the Veteran's low back disability failed to address the psychiatric impact of his symptoms. However, as is explained in greater detail below, this disorder has been recharacterized as a musculoskeletal disorder. As such, the need for a psychiatric assessment for his low back complaints is no longer necessary. 

Finally, it is noted that this appeal was remanded by the Board in March 2009 and May 2011for further development. Specifically, in the March 2009 remand, the RO was instructed to provide the Veteran with VCAA compliant notice, obtain additional VA and private treatment records, acquire any records that may be in the possession of the SSA, and to provide VA examinations addressing the claims on appeal. The second remand, sent in May 2011, instructed the RO to schedule the Veteran for a hearing before the Board. 

The Board is satisfied there was substantial compliance with these remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). First, as was noted above, the Veteran's PTSD claim was granted with a 100 percent disability rating. As such, that claim is no longer on appeal. Moreover, the RO acquired the Veteran's VA treatment records, as well as records from the Veteran's private treating physicians. As noted above, while the RO inquired about the existence of treatment records in possession of the SSA, it appears that none exist. Finally, the Veteran underwent new VA examinations in August 2009 that the Board finds adequate for adjudication purposes. 

With regard to the May 2011 remand, the Veteran subsequently notified VA that he wished for his scheduled hearing to be cancelled. Accordingly, the Board finds that the March 2009 and May 2011 July 2011 Remand directives were substantially complied with and; thus, there is no Stegall violation in this case.

Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1 (2011). Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2011). 

However, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment). 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2011). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2011). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. 

The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45 (2011).

The Court of Appeals for Veterans Claims (CAVC) has held that the RO must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss under 38 C.F.R. § 4.40, which requires the VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. See DeLuca v. Brown, 8 Vet. App. 202 (1995). 

The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The Board notes that the guidance provided by the CAVC in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered.

Furthermore, the intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, actually painful, unstable, or malaligned joints, due to healed injury, are as entitled to at least the minimum compensable rating for the joint. The joints should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. See 38 C.F.R. § 4.59 (2011).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

In this case, the Veteran has been service connected for a low back disability since 1972. By the time he submitted his claim seeking an increased rating in July 2003, he was assigned a 10 percent disability rating under 38 C.F.R. § 4.130, DC 9422 (2003) (addressing somatoform disorders). However, during the course of this appeal, his disability rating had been recharacterized as residuals of a compression fracture to the thoracic spine with degenerative changes in the lumbar spine, and is currently rated under 38 C.F.R. § 4.71a, DC 5243 (addressing intervertebral disc syndrome). 

It is noted that the assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the current diagnosis and demonstrated symptomatology. Any change in a diagnostic code by VA must be specifically explained. Pernorio v. Derwinski, 2 Vet. App. 625 (1992). 

In this case, since the Veteran has been service connected for PTSD, and assigned a disability rating under 38 C.F.R. § 4.130, DC 9411, it would be against VA regulations to assign him ratings under both DC 9411 and 9422. See 38 C.F.R. § 4.14 (avoidance of pyramiding); see also Clemons v. Shinseki, 23 Vet. App. 1 (2009) (a claim for one psychiatric disorder must be considered a claim for any mental disability that may reasonably be encompassed by several factors including the claimant's description of the claim, the symptoms the claimant describes, and the information the claimant submits or that VA obtains in support of the claim).
As such, recategorizing the Veteran's low back disability as one that is musculoskeletal in nature is the best way to prevent unfairly prejudicing the Veteran by adversely affecting his overall rating. See 38 C.F.R. § 3.951(b) (a disability continuously rated for 20 or more years may not be reduced absent a showing of fraud). 

Having determined that the Veteran's low back disability is best rated under 38 C.F.R. § 4.71a, the Board notes that the applicable rating criteria under this section were amended, effective September 26, 2003. See 68 Fed. Reg. 51454 - 51456 (August 27, 2003). Where a law or regulation changes after a claim has been filed or reopened, but before the administrative or judicial appeal process has been concluded, the version most favorable to the veteran will apply. Karnas v. Derwinski, 1 Vet. App. 308, 313 (1991), overruled in part, Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). Thus, the rule that a veteran is entitled to the most favorable of the versions of a regulation that was revised during his, and the preamended regulations may apply to the period on or after the effective dates of the new regulations.

Low Back Rating Prior to August 26, 2009

Prior to August 26, 2009, the Veteran's service-connected low back disability was rated at 10 percent under 38 C.F.R. § 4.71a, DC 5243 (addressing intervertebral syndrome). Under the preamended criteria, in order to warrant a rating in excess of 10 percent, the evidence must show:
* residuals of a vertebral fracture without cord involvement, with abnormal mobility requiring a neck brace (60 percent under DC 5285);
* favorable ankylosis of the dorsal spine (20 percent under DC 5288);
* favorable ankylosis of the lumbar spine (40 percent under DC 5289);
* limitation of motion in the lumbar spine that is "moderate" in nature (20 percent under DC 5292);
* intervertebral disc syndrome that is moderate in nature with recurring attacks (20 percent under DC 5293); or 
* muscle spasm on extreme forward bending and loss of lateral spine motion in the standing position (20 percent under DC 5295).
See 38 C.F.R. § 4.71a (2003). 

Residuals of a vertebral fracture may also be rated under limitation of motion, while adding 10 percent for "demonstrable deformity of the vertebral body." Also, nonspecific words such as "moderate" or "severe" are not defined in these diagnostic codes. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decision is "equitable and just." See 38 C.F.R. § 4.6.

The amended criteria use a general rating formula that applicable for most spine disabilities. Under this rating formula, a rating in excess of 10 percent is warranted when the evidence shows: 
* Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; 
* Combined range of motion of the thoracolumbar spine not greater than 120 degrees; 
* Muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis or abnormal kyphosis; 
* X-ray evidence of arthritis with involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations; or 
* Incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during the past 12 months (all 20 percent). 
38 C.F.R. § 4.71a, DCs 5003, 5237, 5242, 5243 (2011).

The term "combined range of motion" refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, Note 2, prior to DC 5243 (2011). Additionally, an "incapacitating episode" is "a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, Note 1, following DC 5243 (2011).

Any associated neurologic abnormalities including, but not limited to, bowel or bladder impairment, shall be evaluated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Note 1, prior to DC 5243 (2011).

After a review of the competent evidence, a rating in excess of 10 percent is not warranted prior to August 29, 2009 under either set of criteria. First, with respect to the pre-amended criteria, while the Veteran did experience a vertebral fracture, there is no evidence of cord involvement, nor was there any evidence of demonstrable deformity of the vertebral body. Therefore, an increased rating is not warranted on this basis.

An increased rating is also not warranted based on limitation of motion or ankylosis under either criteria, as forward flexion greater than 30 degrees but less than 60 degrees, or a combined range of motion of 120 degrees or less, has not been shown. Moreover, the Board would not characterize the Veteran's limitation of motion to be "moderate" in nature. 

Specifically, at the time of the Veteran's VA examination in January 2004, he complained of mild low back pain that sometimes radiated into his left hip and leg. 
Upon examination the Veteran exhibited 70 degrees of flexion, 18 degrees of extension, a lateral flexion of 29 degrees in each direction and a bilateral rotation of 30 degrees in each direction. His combined range of motion was 206 degrees. The Board notes that this VA examiner did not assess the specific point in range of motion where pain begins. However, he did state that the pain in such range of motion was "mild" in nature, with "good lateral bending right and left, and rotation right." Moreover, there is no indication that pain limits his range of motion to the extent that an increased rating would be warranted. Additionally, there is little evidence of diminished range of motion in any other outpatient evaluations, and the Veteran has never complained of ankylosis of any sort. Therefore, an increased rating is not warranted on these bases. 

The evidence also does not indicate the presence of muscle spasm upon bending or guarding that would result in an abnormal spinal contour. Specifically, at his VA examination in January 2004, his gait was observed to be normal, and there was no evidence of spasm, guarding or localized tenderness. At an outpatient evaluation in August 2005, his gait was symmetric and, in fact, he ambulated well. Additionally, although he has complained of pain in the back, he was still working at that time, and was able to lift objects as heavy as 25 pounds. He also exercises regularly by walking 3 to 4 miles approximately 4 times per week. Therefore, an increased rating is not warranted on these bases. 

Finally, the evidence does not indicate X-ray evidence of arthritis involving 2 or more joint groups or incapacitating episodes of any sort. Specifically, while an X-ray taken of the Veteran's spine in November 2005 indicated diffuse arthritic changes, there is no evidence of involvement of 2 or more joint groups. Moreover, there is no evidence to indicate that he has ever been prescribed periods of bed-rest, nor has there been evidence that there recurring attacks of intervertebral disc syndrome. Therefore, an increased rating is not warranted on this basis. 

Thus, while the Veteran's low back symptomatology is mostly characterized by pain and some limitation of motion, the evidence does not indicate that such limitation is so severe as to warrant a rating in excess of the rating he currently has. Therefore, a rating in excess of 10 percent prior to August 26, 2009, is not warranted based on the clinical evidence of record under either the preamended or current rating criteria. 

Low Back Rating Since August 26, 2009

In a May 2010 rating decision, the Veteran's disability rating was increased to 20 percent, effective August 26, 2009. However, as this is only a partial increase to his disability rating, it was less than the maximum available rating. Therefore, the issue remains on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Corchado v. Derwinski, 1 Vet. App. 160 (1991).

Under the preamended rating criteria, in order to warrant a rating in excess of 20 percent, the evidence must show:
* residuals of a vertebral fracture without cord involvement, with abnormal mobility requiring a neck brace (60 percent under DC 5285);
* unfavorable ankylosis of the dorsal spine (30 percent under DC 5288);
* favorable ankylosis of the lumbar spine (40 percent under DC 5289);
* limitation of motion in the lumbar spine that is "severe" in nature (20 percent under DC 5292);
* intervertebral disc syndrome that is moderate in nature with severe, recurring attacks with intermittent relief (20 percent under DC 5293); or 
* severe lumbosacral strain with listing of the spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in the standing position, loss of lateral motion, narrowing or irregularity of the joint space, or some of the above with abnormal mobility or forced motion (20 percent under DC 5295).

In order to warrant a rating in excess of 20 percent under the current general rating formula established 38 C.F.R. § 4.71a, the evidence must show: 
* forward flexion of the thoracolumbar spine to 30 degrees or less; 
* favorable ankylosis of the entire thoracolumbar spine; or 
* intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months (all at 40 percent).

In this case, the evidence does not indicate that a rating in excess of 20 percent is warranted since August 26, 2009 under either criteria. First, as noted above, although there is evidence of a vertebral fracture, there is no evidence of deformity of the vertebral body. Therefore, an increased rating is not warranted on this basis

Next, neither forward flexion of the thoracolumbar spine to 30 degrees or less, limitation that is "severe" in nature, nor ankylosis has been shown. Specifically, when the Veteran underwent a new VA examination in August 2009, he stated that he has been experiencing "jabbing pain" since active duty service that was moderate in severity. Such pain occurred approximately once per week and lasted approximately 3 to 4 days. He also indicated that he experiences mild flare-ups approximately once per week. 

Upon examination, the Veteran exhibited 45 degrees of flexion, 15 degrees of extension, 20 degrees of left flexion, 10 degrees of right flexion, 25 degrees of leftward rotation and 20 degrees of rightward rotation. The VA examiner also noted that there was no additional loss in range of motion, even after repetitive motion. There is no other occasion since August 26, 2009 where the Veteran's range of motion was observed. Moreover, at no point since August 26, 2009 has ankylosis been shown. Indeed, the presence of a measureable (albeit reduced) range of motion rebuts any suggestion that ankylosis is present. Therefore, an increased rating is not warranted on these bases. 

The evidence also does not indicate that there has been incapacitating episodes at all since August 26, 2009. Indeed, there was no stated history of incapacitating episodes at his August 2006 VA examination. Moreover, there has been no indication of such incapacitating episodes during any other treatment. Finally, there is no evidence of a lumbar strain, that leads to an abnormal gait, loss or lateral motion or narrowing of the joint space. Therefore, an increased rating is not warranted on this basis. 

Thus, while the Veteran has low back pain and a limited range of motion, flexion to 30 degrees or less, ankylosis or incapacitating episodes have not been shown. Therefore, a rating in excess of 20 percent is not warranted since August 26, 2009 under either the preamended or current criteria. 

The Board has also considered a functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-7 (1995). However, an increased evaluation for the Veteran's service-connected low back disability is not warranted on the basis of functional loss due to pain or weakness in this case, as the Veteran's symptoms are contemplated by the ratings already assigned. 

Specifically, the VA examiners provided information relating to the amount of limitation that is caused by pain and fatigue. Notably, at the most recent VA examination, the examiner explicitly stated that there was no additional range of motion loss due to fatigue, lack of endurance, or incoordination. Moreover, during both periods on appeal, the Veteran stated that he was able to do many activities, to include lifting of reasonably heavy objects and engaging in regular (and relatively strenuous) exercise. Put another way, the effect of this symptomatology is contemplated in the currently assigned disability evaluations.

Next, the Board has considered whether a separate evaluation is warranted for any associated neurological abnormality. Under 38 C.F.R. § 4.71(a), any associated objective neurologic abnormalities, including but not limited to, bowel or bladder impairment, separately, is also to be evaluated under the appropriate diagnostic code. See 38 C.F.R. § 4.71(a) (2010). However, the evidence does not indicate that a separate rating is warranted. 

Specifically, at his VA examination in January 2004, the Veteran sensory functioning and motor functioning were observed to be normal. While he complained of some occasional neuralgia at an evaluation in November 2005, a VA examination in August 2009 did not show any increasing neurological symptoms. To the contrary, his sensory functioning was again observed to be normal in the lower extremities, and his strength was also normal. Finally, there was no evidence of fecal or urinary incontinence that is attributable to a neurological disorder. Thus, a separate evaluation based on neurological symptomatology is not warranted. 

Therefore, although the Veteran has complained of pain and a somewhat limited range of motion, the evidence does not indicate that a rating in excess of 20 percent since August 26, 2009, is warranted based on the clinical evidence of record. 

Left Femur

The Veteran has been service connected for residuals of a fracture to the left femur with a 10 percent disability rating under 38 C.F.R. § 4.71a, DC 5255 since 1971. He submitted a new claim seeking an increased rating for this disability in July 2003. In order warrant a rating in excess of 10 percent under this diagnostic code, the evidence must show malunion of the femur with moderate knee or hip disability (20 percent). It should also be noted that, nonspecific words such as "moderate" or "severe" are not defined in these diagnostic codes. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decision is "equitable and just." See 38 C.F.R. § 4.6.

In this case, a rating in excess of 10 percent is not warranted. Specifically, during a VA examination in January 2004, the Veteran complained of pain and weakness in the leg, but there were no episodes of subluxation or dislocation of the femur joints. Moreover, his range of motion was only slightly diminished, with no pain in motion. See 38 C.F.R. § 4.71, Plate II (2011) (normal range of motion of the hip and knee joints). Additionally, he was able to walk without any assistive devices. 

During a VA examination in August 2009, the Veteran complained that his leg was somewhat worse than before. However, there was no deformity, giving way or instability of the left hip or the femur itself. There were also no episodes of dislocation or subluxation, locking or effusion. While there was again some slight limitation of motion, there is no evidence of malunion of the femur. Moreover, there is no evidence from his outpatient records to indicate malunion of the femur. 

Therefore, while the Veteran's left femur fracture residuals are characterized by some occasional aching, the evidence does not indicate malunion of the femur. Moreover, although whether there is a moderate knee of hip disability is not reached, the evidence does not indicate that such disabilities are present to a moderate level in any event. 

As was the case with other issues on appeal, the Board has also considered functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. at 202 (1995). However, as noted above, the next higher rating requires malunion of the femur before considering severity a disability to the hip or knee joint. As the malunion of the femur has not been indicated, the aspect of the rating criteria that might involve the DeLuca criteria are not reached. See Johnston v. Brown, 10 Vet. App. 80, 84-85 (1997).

With regard to all increased rating claims, the Board has also considered the Veteran's statements that his disabilities are worse than the ratings he currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

In this case, the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses. Layno, 6 Vet. App. at 470. He is not, however, competent to identify a specific level of disability to his low back or left leg according to the appropriate diagnostic codes. 

On the other hand, such competent evidence concerning the nature and extent of the Veteran's disabilities has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated.

Next, the Board will consider whether referral for an extraschedular evaluation is warranted. The question of an extraschedular rating is a component of a claim for an increased rating. Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

The Court of Appeals for Veteran's Claims has clarified the analytical steps necessary to determine whether referral for such consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, VA must first determine whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology.

If the rating criteria are inadequate, VA must then determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration.

In this case, the evidence does not indicate that Veteran's disability picture for either disability could not be adequately contemplated by the applicable schedular rating criteria discussed above. Specifically, the Veteran's left leg and low back disabilities were applied to the applicable rating criteria, general counsel opinions, and case law. 

Although the diagnostic codes in this case allow for higher ratings, the Board fully explained why the higher ratings were not warranted. Therefore, given that the applicable schedular rating criteria are more than adequate in this case, the Board need not consider whether the Veteran's disability picture includes exceptional factors, and referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

In sum, after a careful review of the evidence of record, the Board finds that the benefit of the doubt rule is not applicable and these appeals are denied.

Earlier Effective Date for Paroxysmal Benign Arrhythmia

In general, the effective date for the grant of service connection based upon an original claim or a claim reopened after final disallowance is either the day following separation from active service or the date entitlement arose if the claim is received within one year after separation from service; otherwise it will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110(b)(1) (West 2002); 38 C.F.R. § 3.400(b) (2011).

For effective date purposes, a claim is a formal or informal written communication identifying and requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit. 38 C.F.R. § 3.1(p) (2011). Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA, from a claimant, her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris, may be considered an informal claim.

Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year after the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155 (2011); Norris v. West, 12 Vet. App. 413, 421 (1999).

There are some exceptions to the regulations set forth in 38 C.F.R. § 3.400. First, if compensation is awarded pursuant to a liberalizing law, the effective date of such award shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the act or administrative issue. Moreover, if a claim is reviewed, upon the Veteran's request, more than one year after the effective date of the liberalizing law or VA issue, benefits may be authorized for only a period of one year prior to the date of receipt of the request for review. See 38 U.S.C.A. § 5110(g); 38 C.F.R. §§ 3.114, 3.400(p); McCay v. Brown, 9 Vet. App. 183 (1996), aff'd 106 F.3d 1577 (Fed. Cir. 1997).

A second exception to the regulations regarding effective dates for disability compensation involves those Veterans who qualify as eligible under 38 C.F.R. § 3.816. See also Nehmer v. United States Veterans Administration, 712 F. Supp. 1404 (N.D. Cal., May 2, 1989). Under that regulation, a Nehmer class member is a Veteran who served in the Republic of Vietnam and who has a "covered herbicide disease" such as diabetes mellitus, Hodgkin's disease, multiple myeloma, non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers, or soft-tissue sarcoma. See 38 C.F.R. § 3.816(b) (2011).

In this case, in a June 2005 rating decision, the Veteran was granted service connection for paroxysmal benign arrhythmia with an effective date of July 16, 2003. The Veteran has disagreed with this effective date. It is noted at the outset that neither of the above exceptions to 38 C.F.R. § 3.400 are applicable. Of particular note, on October 13, 2009, in accordance with authority provided in 38 U.S.C. § 1116, the Secretary of Veterans Affairs announced his decision to establish additional presumptions of service connection based upon exposure to toxic herbicides within the Republic of Vietnam for Parkinson's disease, B cell leukemias and, as is relevant here, ischemic heart disease. 

"Ischemic heart disease" includes, but is not limited to, "acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina." Accordingly, effective August 31, 2010, VA amended 38 C.F.R. § 3.309(e) to add the above disorders to the list of presumptive diseases associated with exposure to certain herbicide agents. 75 Fed. Reg. 53202 (August 31, 2010). The final rule is applicable to claims received by VA on or after August 31, 2010, and to claims pending before VA on that date.

While the Veteran has heart related disorder, arrhythmia is not considered a disorder within the definition of "ischemic heart disease." Therefore, the Veteran is not eligible for and earlier effective date under of 38 C.F.R. § 3.816 because, although he did serve in the Republic of Vietnam, the Veteran is not a "Nehmer class member" within the meaning of 38 C.F.R. § 3.816(b)(1), because heart arrhythmia is not one of the "covered herbicide diseases" within the meaning of 38 C.F.R. § 3.816(b)(2). Thus, the Veteran is not eligible for an earlier effective date under 38 C.F.R. § 3.816(c)(1).

Thus, the Board must next consider entitlement to an effective date in accordance with 38 C.F.R. §§ 3.114 and 3.400. As to the current claim on appeal, the Veteran first mentioned the existence of a heart disorder in an October 6, 2003 statement, although he did not specifically claim entitlement to service connection for this disorder. The Veteran did submit a formal claim in July 16, 2003, seeking ratings for his already service-connected disorders. However, he did not mention a heart disorder at that time. 

Nevertheless, according to the June 2005 rating decision, the RO construed the Veteran's July 16, 2003 statement as date he first submitted a claim for benefits related to his heart disorder. This is generous, given that he did not mention his heart disorder until October 2003. However, in order to afford the Veteran the benefit of every reasonable doubt, the Board also determines that, for effective date purposes, the date of the Veteran's formal claim is July 16, 2003. 

In establishing this date as the date of his formal claim, the Board has also considered the Veteran's argument that he claimed entitlement to service connection for a heart disorder in his original claim in 1972. At that time, while he submitted a claim in April 1972 that was directed toward his left femur injury, as well as back and chest pain, he also stated in March 1972 that he has experienced "occasional fluttering in [my] chest and occasional blackouts. Also severe headaches and momentary loss of sight." 

It is VA policy that a veteran's claims be interpreted broadly, in order to maximize the benefits available to him or her. See Brannon v. West, 12 Vet. App. 32, 35 (1998). As such, it is reasonable to conclude that the Veteran raised the issue of a heart disorder in his April 1972 claim. However, a review of the June 1972 rating decision indicates that this claim was adjudicated at that time. 

Specifically, the U.S. Court of Appeals for the Federal Circuit has stated that where the veteran files more than one claim with the RO at the same time, and the RO's decision acts, favorably or unfavorably, on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run. Deshotel v. Nicholson, 457 F.3d 1258 (Fed.Cir.2006). However, in determining whether this applies, VA should consider factors such as (1) the specificity of the claim; (2) the specificity of the adjudication; (3) the timing of the claims; and (4) whether the veteran is represented. See Cogburn v. Shinseki, 24 Vet. App. 205 (2010). 

In this case, although the Veteran complained of fluttering in the chest in March 1972, these complaints were in the context of other complaints such as "tight, sharp pains" in the upper portion of his chest and low back. It is unclear from his statement that he believed his chest pain and the "fluttering" he referred to were two separate disorders. Moreover, when he submitted his second statement in April 1972, he mentioned only chest pain. Thus, his statements are vague to the point that it is reasonable that the RO saw his complaints of "fluttering" in the chest to be related to his other general chest pain complaints. 

When the RO issued its June 1972 rating decision, it granted service connection for what it described the as a psychophysiological musculoskeletal reaction "claimed as back pain [and] chest pain." The Board finds that this characterization of the disorder was meant to encompass all complaints of chest pain, to include the "fluttering" mentioned in March 1972. Significantly, the Veteran did not disagree with the characterization of this rating. 

Thus, the symptoms described by the Veteran in 1972 were adequately addressed in the RO's June 1972 rating. Moreover, as he did not disagree with this decision, nor did he submit relevant evidence within one year of that decision, the claims he submitted in March and April 1972 have been finally adjudicated and are not open claims. See Buie v. Shinseki, 24 Vet. App. 242 (2010). Therefore, his July 16, 2003 claim remains the date of his formal claim for this issue. 

The date of the claim having been established, the Board will review the evidence from the year prior to July 16, 2003, in order to consider whether there was an intent to file a claim for benefits. However, the evidence of record does not indicate any statements or other documents indicating the intent to submit a claim for arrhythmia during that time. 

Therefore, not only were there no communications prior to July 16, 2003 indicating the intent to file a formal claim, but the available evidence of record does not indicate correspondence of any kind for years prior to this date. As such, the Board concludes that the effective date the Veteran's service-connected paroxysmal benign arrhythmia is July 16, 2003, and his claim for an earlier effective date is denied.


ORDER

A rating in excess of 10 percent for a psychophysiological musculoskeletal reaction in the low back from July 16, 2003 to August 26, 2009, is denied. 

A rating in excess of 20 percent for a psychophysiological musculoskeletal reaction in the low back since August 26, 2009, is denied. 

A rating in excess of 10 percent for residuals of a left femur fracture since July 16, 2003 is denied.

An effective date prior to July 16, 2003 for the grant of service connection for paroxysmal benign arrhythmia is denied. 


REMAND

The Board notes that the issue of entitlement to TDIU was not addressed by the Board when this appeal was previously remanded in May 2011. However, this omission is of no prejudice, since the Veteran's disability picture has changed since that time. To review, he has asserted that he has been unemployed since April 2005, and has been unable to maintain employment since that time primarily due to his service-connected posttraumatic stress disorder (PTSD) and paroxysmal benign arrhythmia. Entitlement was denied by the RO in a June 2009 decision and a March 2011 statement of the case. However, since these decisions, the Veteran's disability rating for his PTSD was increased to 100 percent, effective November 17, 2003. 

Nevertheless, the grant of a total schedular disability rating does not render the issue of entitlement to TDIU moot. Notably, VA has the duty to maximize a claimant's benefits, to include consideration of whether his disabilities (or combination thereof) establishes entitlement to special monthly compensation (SMC) under 38 U.S.C.A. § 1114. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); Bradley v. Peake, 22 Vet. App. 280, 294 (2008). Specifically, VA must consider a TDIU claim, including on an extra-schedular basis in accordance with 38 C.F.R. § 4.16(b), despite the existence of a schedular total rating and award SMC under 38 U.S.C.A. § 1114(s) if VA finds the separate disability supports a TDIU rating based on the other than the disability that is rated at 100 percent. See also 75 Fed. Reg. 11,229-04 (March 10, 2010) (withdrawing VAOPGCPREC 6-1999). 

Thus, in view of Bradley, the salient question is whether the Veteran is unemployable due to his service connected-disabilities other than his PTSD. However, it would be prejudicial to the Veteran for the Board to consider this issue in the first instance. As such, this issue should be first considered by the RO and, if the benefit sought remains denied, a Supplemental Statement of the Case (SSOC) should be issued. See 38 C.F.R. § 19.31 (2011).

Accordingly, the case is REMANDED for the following action:

1 Adjudicate the issue of entitlement to TDIU, including on an extra-schedular basis in accordance with 38 C.F.R. § 4.16(b), based on the Veteran's service-connected disabilities other than his service-connected PTSD. The RO should undertake all development it deems necessary in order to properly consider this issue. 

2. If the benefit sought on appeal remains denied, the Veteran and her representative should be furnished an appropriate SSOC and provided opportunity to respond. Then, return the case to the Board for further appellate consideration, as appropriate.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs